# No. 23-1890

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

TAMER MAHMOUD AND ENAS BARAKAT; JEFF AND SVITLANA ROMAN; CHRIS AND MELISSA PERSAK, IN THEIR INDIVIDUAL CAPACITIES AND EX REL. THEIR MINOR CHILDREN; AND KIDS FIRST, AN UNINCORPORATED ASSOCIATION,

*Plaintiffs-Appellants*,

v.

MONIFA B. MCKNIGHT, IN HER OFFICIAL CAPACITY AS SUPERINTENDENT OF THE MONTGOMERY COUNTY BOARD OF EDUCATION; THE MONTGOMERY COUNTY BOARD OF EDUCATION; AND SHEBRA EVANS, LYNNE HARRIS, GRACE RIVERA-OVEN, KARLA SILVESTRE, REBECCA SMONDROWSKI, BRENDA WOLFF, AND JULIE YANG, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE BOARD OF EDUCATION,

*Defendant-Appellee*.

---

On Appeal from the United States District Court for the
District of Maryland, Southern Division, No. 8:23-cv-1380
United States District Court Judge Deborah L. Boardman

---

**BRIEF OF AMICI CURIAE JEWISH COALITION FOR RELIGOIUS LIBERTY, COALITION OF VIRTUE, ISLAM AND RELIGIOUS FREEDOM ACTION TEAM, AND COALITION FOR JEWISH VALUES IN SUPPORT OF PLAINTIFFS-APPELLANTS**

---

                                                         HOWARD SLUGH
                                                         *2400 Virginia Ave N.W. Apt. C619*
                                                         *Washington, D.C. 20037*
                                                         *(954) 328-9461*
                                                         *Hslugh@JCRL.org*

                                                         *Counsel for Amici Curiae*

September 4, 2023

## CORPORATE DISCLOSURE STATEMENT

Under Rules 26.1 and 29(a) of the Federal Rules of Appellate Procedure, Amici Jewish Coalition for Religious Liberty, Coalition for Virtue, Islam and Religious Freedom Action Team, and Coalition for Jewish Values certify that they are nonprofit organizations and thus have no parent corporations and no stock.

Date: September 4, 2023.

/s/____Howard Slugh_____

Howard Slugh

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iii

STATEMENT OF THE ISSUE ..................................................................................... 1

INTEREST OF AMICI CURIAE .................................................................................. 1

ARGUMENT ................................................................................................................. 3

    I.    There is a Biblically Derived Obligation on Parents to Educate Their Children. ................................................................................................................ 3

    II.    The Policy of The Montgomery County Board of Education Interferes With This Obligation. ................................................................................................... 7

CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Mahmoud v. McKnight*, No. CV DLB-23-1380, 2023 WL 5487218 (D. Md. Aug. 24, 2023) ...........................................................................................................3

**Other Authorities**

Abu Bakr al-Bayhaqi, SHU'AB AL-IMAN, Vol. 6, Beirut: Dar al-Kutub al-'Ilmiyya (2000) ..................................................................................................7

Chabad.org, *Jewish Education 101*, https://tinyurl.com/56zp7c5w......................................................................4,5

Deuteronomy 6: 6-7................................................................................................3

Genesis 18:19 ………............................................................................................3

Jonathan Sacks, THE DIGNITY OF DIFFERENCE (2002) …......................................5

Muhammad ibn Ahmad Al-Qurtub, AL-JAMI' AL-AHKAM AL QURAN, Vol 18, Cairo: Maktaba Dar al-Kutub al-Masria (1964) .......................................................6

Proverbs 1:8………..............................................................................................3

Qadi Muhammad ibn al-'Arabi, AHKAM AL-QURAN, Vol. 4, Beirut: Dar al-Kutub al-'Ilmiyya (2003) ...........................................................................6

Quran, Surah at-Tahrim 66:6..................................................................................6

Samuel J. Abrams, *Jews and the Faith of Their Children*, American Enterprise Institute (2022), https://tinyurl.com/mr2zr9rt.............................................3,5

Talmud, Kiddushin: 30a..................................................................................5

The Jewish Agency, *Parents as Educators* (2005),
    https://archive.jewishagency.org/lifecycle/content/24239/....................3,4,5,6

The Rabbis Sacks Legacy, *Passover tells us: Teach your children well* (2011),
    https://tinyurl.com/c7b5wddn ......................................................................4

Tim Mackie, *What's the Meaning of the Jewish Shema Prayer in the Bible?*,

BibleProject, https://tinyurl.com/mryk97td............................................................4

## STATEMENT OF THE ISSUE

Whether a school policy denying parents both notice and the ability to opt-out of a storybook curriculum involving issues of family life and human sexuality that is inconsistent with parents' religious beliefs, violates those parents' right to educate their children in accordance with their faith.

## INTEREST OF AMICI CURIAE[1]

The Jewish Coalition for Religious Liberty is an incorporated organization of rabbis, lawyers, and communal professionals who practice Judaism and are committed to defending religious liberty.

The mission of Coalition of Virtue is to promote virtue in society, grounded in divine guidance as embodied in the Islamic tradition, in cooperation with those who share our moral vision. COV envisions an America where families have a say in their children's education, equal opportunities are available to all, and the highest good is championed.

---

[1] No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person—other than the amici, their members, or their counsel—contributed money that was intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

The Islam and Religious Freedom Action Team ("IRF") of the Religious Freedom Institute serves as a Muslim voice for religious freedom grounded in the traditions of Islam. To this end, the IRF engages in research and education, and advocates for the right of everyone to believe, speak, and live in accord with their faith.

Coalition for Jewish Values ("CJV") is the largest Rabbinic public policy organization in America, representing over 2,500 traditional, Orthodox rabbis. CJV promotes religious liberty, human rights, and classical Jewish ideas in public policy, and does so through education, mobilization, and advocacy, including by filing *amicus curiae* briefs in defense of equality and freedom for religious institutions and individuals.

Each of these amici is committed to ensuring that parents can maintain a robust role in their children's education, consistent with their religious ideals, even if they choose to send their children to public school.

# ARGUMENT

## I. There is a Biblically Derived Obligation on Parents to Educate Their Children.

The Bible makes clear that parents assume a religious duty to educate their children. Indeed, the Bible explicitly prescribes to parents that "these words which I command unto you today, *you shall teach them diligently to your children*, and you shall speak of them, as you sit in your home and as you walk on your way outside, when you lie down and when you awaken." Deuteronomy 6:6-7 (emphasis added). In fact, the theme of educating children appears even earlier than that. The first book of the Bible, Genisis, explains the significance of God having chosen to approach Abraham as follows: "For I have known him because he commands his sons and his household after him, that they should keep the way of the Lord to perform righteousness and justice." Genesis, 18:19. From the outset then, the Bible recognizes the importance of parental instruction. The obligation on parents to teach their children is further solidified by the mirror obligations on a child to "heed the discipline of your father, and [not to] forsake the instruction of your mother." Proverbs 1:8. In short, the Bible clearly dictates that when it comes early childhood education, it is "the sphere of the home" that serves "as the basis for the child's emerging conception of the world around him." The Jewish Agency, *Parents as Educators* (2005), https://archive.jewishagency.org/life-cycle/content/24239/.

In the Jewish tradition, the role of parental education is of unparalleled significance. This is reflected by the fact that the aforementioned Biblical prescription to teach one's children is centrally featured in the *Shema*—one of the most important daily prayers recited by Jewish people. *See* Tim Mackie, *What's the Meaning of the Jewish Shema Prayer in the Bible?*, BibleProject, https://tinyurl.com/mryk97td. Indeed, it is the family unit above all else that "is the major educational institution mentioned in the Bible," and it is "the mother and father [who] were totally responsible for teaching the child the ways of the Almighty." *Parents as Educators*. From these biblical roots, stems a rabbinic commandment—known in Judaism as a *Mitzvah*—for parents to educate their children in accordance with Torah teachings. This commandment is called *Chinuch* and begins when a child reaches the age of three. Chabad.org, *Jewish Education 101*, https://tinyurl.com/56zp7c5w. This is why, for example, many of the Jewish holidays and traditions focus on "parents and elders in the community imparting Jewish values, ideas, and history to children and younger members of the community." Samuel J. Abrams, *Jews and the Faith of Their Children*, American Enterprise Institute (2022), https://tinyurl.com/mr2zr9rt; *see also* The Rabbis Sacks Legacy, *Passover tells us: Teach your children well* (2011), https://tinyurl.com/c7b5wddn (explaining that the key element of the Passover Seder is the education of Children by their parents).

The importance of the *Chinuch* obligation is extensively documented in rabbinic works and its reach extends beyond merely teaching children the dos and don'ts of Jewish Law; it entails the transmission of "morals and Jewish values." *Jewish Education 101*. The home, therefore, serves as the primary incubator of these morals and values. As the famous Talmudic commentator, Rashi, quipped: "what the child speaks in the marketplace, he has heard at home from his mother or father." *Parents as Educators*. While this obligation obviously serves the immediate interests of encouraging children to live their lives according to Torah values, it also ensures that no matter the surrounding circumstances, the Jewish tradition will survive. *See* Talmud, Kiddushin: 30a ("Whoever teaches his son teaches not only his son but also his son's son---and so on to the end of generations."); *Jews and the Faith of Their Children* ("Religious ideas taught at home have anchored Jewish identity and outlook for generations."). Indeed, in describing the importance of the Jewish system of education, Rabbi Lord Jonathan Sacks explained: "It is no exaggeration to say that this lay at the heart of the Jewish ability to survive catastrophe, negotiate change and flourish in difficult circumstances." Jonathan Sacks, THE DIGNITY OF DIFFERENCE, 139 (2002).

Recent works of rabbinic literature also emphasize the unique role that parents must play in their children's education. For example, noted Jewish educator Rabbi Samson Rapahel Hirsch, explains how "parents must keep in mind that there is no

5

substitute for the educational influence of their own example" because "the child sees in the picture of his parents' life, the shape of his life in the future." *Parents as Educators*. This is the core of *Chinuch*; it is a religious obligation on parents to cultivate their children's spiritual growth and raise the next generation of Torah-abiding Jews.

A similar tradition exists within the Islamic faith. The Quran states: "O you who believe! Save yourselves and your families from a fire whose fuel is men and stones …." Quran, Surah at-Tahrim 66:6. This is understood to encompass an obligation to educate one's children.

For example, Ibn Al-'Arabi (d. 1148 CE), a seminal Andalusian jurist, understood that verse to mean: "It is obligatory upon a man to rectify himself through obedience to God, and to rectify his family with the care that a shepherd would give to his flock." Qadi Muhammad ibn al-'Arabi, AHKAM AL-QURAN, Vol. 4, pp. 300-301. Beirut: Dar al-Kutub al-'Ilmiyya (2003). The influential Quranic exegete Muhammad al-Qurtubi (d. 1273 CE), stated that this verse meant: "one should teach one's children what is permissible and what is impermissible, and turn him or her away from acts of disobedience and sin, and so on, regarding the various rulings of the sacred law." Muhammad ibn Ahmad Al-Qurtubi. AL-JAMI' AL-AHKAM AL QURAN, Vol 18, p. 194. Cairo: Maktaba Dar al-Kutub al-Masria (1964). In this connection, al-Qurtubi cites a saying of the Prophet Muhammad: "A child's right

6

over his father is that his father teach him writing, swimming and archery, and to have good character." Abu Bakr al-Bayhaqi, SHU'AB AL-IMAN, Vol. 6, p. 401. Beirut: Dar al-Kutub al-'Ilmiyya (2000).

## II. The Policy of The Montgomery County Board of Education Interferes With This Obligation.

The Montgomery County Board of Education's new storybooks initiative discusses issues surrounding family life and human sexuality, and encourages students to question sexuality and gender identity. Given that these issues are often infused with religious significance, the School Board's decision to deny parents notice of when the new books will be used and refuse to accommodate religious objectors' reasonable opt-out requests, is a clear burden on parents' obligation to educate their children in accordance with their understanding of Biblical ideals.

The new initiative will include over 22 LGBTQ+ texts, *Mahmoud v. McKnight*, No. CV DLB-23-1380, 2023 WL 5487218, at *2 (D. Md. Aug. 24, 2023), and require teachers to include those books in their curriculum, including by recommending these books to students and reading them aloud in class, *see id.* at *4. And as the district court concluded, these storybooks "may be viewed as endorsing particular viewpoints" on "gender identity, transgenderism, and same-sex marriage" that religious parents might find objectionable. *Id.* at *21.

7

The initiative therefore makes it harder for parents to fulfill their religious mandate of educating their children according to their beliefs; this is a burden on religious exercise by any reasonable account. In seeking to avoid this manifest burden on religious exercise, the School Board presented—and the lower court accepted—two different arguments: neither withstands scrutiny.

First, the School Board suggests that the initiative does not entail actual instruction on the objectionable topics but is at most incidental exposure. This cannot be reconciled with how the initiative is described. The School Board's own documents and instructional materials explain that the purpose of the initiative is to "help young people develop empathy for a diverse group of people and learn about identities that might relate to their families or even themselves." *Id*. at *5. The goal is that "[b]y learning about the diversity of gender, children have an opportunity to explore a greater range of interests, ideas, and activities." *Id.* While that may be an admirable goal according to the School Board, it flatly contradicts the idea that these storybooks are not meant to influence school students into thinking in specific ways that may contradict the religious instruction they receive at home. Indeed, despite claiming that the storybooks are not "about making students think a certain way," the School Board nonetheless describes that the point of the initiative "is to show that there is no one 'right' or 'normal' way to be." *Id.* at *6. The School Board cannot plausibly

8

argue that a curriculum designed to show kids that there is no one "right" way to be, has no conflict with religious education that may very well believe in a single right way to be. Moreover, the proposed "think aloud" moments further demonstrate that the initiative is designed to encourage specific ideas. For example, the storybook *Prince & Knight* is supposed to help a student wonder "how he might feel about the pressure his parents are putting on him to find a princess," and teachers are encouraged to point out in *Born Ready* that "we know ourselves best." *Id*. The clear instructional goals of the storybooks undermine any argument from the School Board that the initiative is solely aimed at mere exposure.

Second, the district court agreed with the School Board that an opt-out for religious parents is unnecessary because while the storybooks at issue may contain objectionable instruction, those storybooks are only "a small subset of many books used" in the curriculum and do not constitute a "constant stream of like materials." *Id*. at *21. In other words, according to the district court, even if the storybooks do contain messages that burden parents' religious obligations to educate their children, the initiative passes constitutional muster because it does not create a "constant stream" of religious burdens. That is not how constitutional protections work. An infringement on religious exercise is not rendered lawful simply because in the government's opinion it is only a small

9

infringement. The initiative is designed to impart certain messages surrounding family life and sexuality, those messages make it hard for some parents to educate their children in accordance with their religious principles; this is a burden on religious exercise, period. If anything, the fact that parents only want to opt out of a "small subset" of the materials makes it unlikely that the state has a compelling interest in refusing their request.

## CONCLUSION

This Court should reverse the decision below and grant Plaintiffs a preliminary injunction.

Date: September 4, 2023.                                     Respectfully Submitted,

Howard Slugh
Counsel of Record
2400 Virginia Ave N.W.
Apt. C619
Washington, D.C., 20037
(954) 328-9461
Hslugh@JCRL.ORG

Counsel for Amici Curiae