No. 23-1890

# United States Court of Appeals for the Fourth Circuit

_____

TAMER MAHMOUD, ET AL.,
PLAINTIFFS-APPELLANTS,

*v.*

MONIFA B. MCKNIGHT, ET AL.,
DEFENDANTS-APPELLEES.

_____

*APPEAL FROM THE U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND,
NO. 23-CV-1380, HON. DEBORAH L. BOARDMAN, PRESIDING*

_____

**BRIEF OF PROFESSORS DOUGLAS LAYCOCK, RICHARD W. GARNETT, HELEN M. ALVARÉ, THOMAS C. BERG, AND MICHAEL W. MCCONNELL AS *AMICI CURIAE* SUPPORTING PLAINTIFFS-APPELLANTS' MOTION FOR INJUNCTION PENDING APPEAL**

_____

CHRISTOPHER MILLS
*Spero Law LLC*
*557 East Bay Street #22251*
*Charleston, SC 29413*
*(843) 606-0640*
*cmills@spero.law*

Counsel for *Amici Curiae*

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................... ii

Interest of *Amici Curiae* ............................................................................................1

Introduction .................................................................................................................2

Argument.....................................................................................................................3

     I.      The Supreme Court has clarified free exercise doctrine. ......................3

     II.     The district court's old, out-of-circuit authority no longer holds. ........9

Conclusion ................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 267 F. Supp. 3d 1218 (N.D. Cal. 2017) ................................................................................................11

*Cal. Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010 (9th Cir. 2020) ................................................................................................11

*Carson v. Makin*, 142 S. Ct. 1987 (2022) ..........................................................4, 7

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ....5

*D.L. v. Baltimore Bd. of Sch. Comm'rs*, 706 F.3d 256 (4th Cir. 2013) ....................11

*Edwards v. Aguillard*, 482 U.S. 578 (1987) ............................................................6

*Emp. Div., Dep't of Hum. Res. of Ore. v. Smith*, 494 U.S. 872 (1990) ........ 4, 5, 6, 9

*Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246 (2020) ................... 3, 7, 11

*Fleischfresser v. Dirs. of Sch. Dist.* 200, 15 F.3d 680 (7th Cir. 1994) ....................10

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) ........................................5, 6

*Hartmann v. Stone*, 68 F.3d 973 (6th Cir. 1995) .....................................................5

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) .......................................5

*Lee v. Weisman*, 505 U.S. 577 (1992) ..................................................................6, 8

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020)..................................................................................................5

*Mozert v. Hawkins Cnty. Bd. of Educ.*, 827 F.2d 1058 (6th Cir. 1987)...................10

*Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008)..........................................................9

*Sherbert v. Verner*, 374 U.S. 398 (1963) .................................................................8

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021) .............................................................5

*Tenafly Eruv Ass'n, Inc. v. Tenafly*, 309 F.3d 144 (3d Cir. 2002)............................5

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017) ... 4, 7, 8

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)........................................... 3, 4, 6, 9, 10

*World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531 (7th Cir. 2009)..........5

**STATUTES**

Md. Code Ann., Educ. § 7-301 .................................................................................8

**OTHER AUTHORITIES**

DeGroff, *Parental Rights and Public School Curricula*, 38 J.L. & Educ. 83 (2009) ............................................................................................................ 2, 12

Laycock, *The Religious Exemption Debate*, 11 Rutgers J. L. & Religion 139 (2009) ..................................................................................................................4

## INTEREST OF *AMICI CURIAE*

*Amici* are constitutional law scholars whose scholarship and teaching have a particular focus on the First Amendment Free Exercise and Establishment Clauses. For decades, these professors have closely studied constitutional law and religious liberty, published many books and scholarly articles on the topic, and addressed it in litigation. The *amici* bring to this case a deep theoretical and practical understanding of the Supreme Court's First Amendment jurisprudence.[1]

---

[1] No party's counsel authored this brief, and no one other than *amici* or their counsel contributed money for it.

## INTRODUCTION

Over the past 20 years, the U.S. Supreme Court has substantially refined Free Exercise Clause doctrine. It has made clear that parents have a broad right to direct the religious upbringing of their children; that religious claimants have the best understanding of the importance of their own religious beliefs; that indirect coercion is a burden on free exercise; and that the government cannot evade constitutional limits by casting its benefit programs as a voluntary "choice" by the religious claimants. Yet the district court flouted these binding refinements. Instead, it relied on outdated, out-of-circuit authority that is largely irrelevant and otherwise no longer persuasive given developments in free exercise doctrine. Those developments return the law to where it has been for most of the country's history: recognizing that "parents enjoy a fundamental constitutional right to have their children excused from specific curricular elements . . . when their objections are based upon religious concerns." DeGroff, *Parental Rights and Public School Curricula*, 38 J.L. & Educ. 83, 128 (2009).

Whether to protect this free exercise right in this case is not a close call. Even the district court agreed that the point of the Defendants' mandatory (and covert) readings is to "influence" children. Op. 43. Especially given the topics of these readings, that influence comes at the expense of the moral and religious instruction of many believers across many faiths. The Court should enter an injunction pending appeal.

2

# ARGUMENT

**I.  The Supreme Court has clarified free exercise doctrine.**

Because the district court's opinion—and the old, out-of-circuit authorities it relies on—largely do not account for the Supreme Court's recent Free Exercise Clause jurisprudence, we start with first principles. Contrary to the court's repeated suggestion that *Wisconsin v. Yoder* provides only a "*sui generis*" right "inexorably linked to the Amish community[]" to opt out of public schools (Op. 37–38, 51), the Supreme Court recently explained that, "[d]rawing on 'enduring American tradition,' we have long recognized the rights of parents to direct 'the religious upbringing' of their children." *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2261 (2020) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 213–214 (1972)).

Quoting a conclusory sentence from *Yoder*, the Defendants have argued that the "Plaintiffs have offered no evidence that the challenged policy would 'gravely endanger if not destroy the free exercise of [the parents'] religious beliefs.'" ECF No. 42, at 11 (quoting *Yoder*, 406 U.S. at 219). The district court adopted a similar approach. Op. 49–50. But *Yoder* did not establish some extremely high floor for religious exercise burdens. The relevant section of the Court's opinion merely analyzed whether the plaintiffs' claims were "rooted in religious belief." *Yoder*, 406 U.S. at 215. Even the Defendants do not appear to dispute that the Plaintiffs' claims here are "rooted in religious belief." And strict scrutiny applies to government action

3

that infringes the *Yoder* right no matter the action's neutrality or general applicability. *See Emp. Div., Dep't of Hum. Res. of Ore. v. Smith*, 494 U.S. 872, 881 (1990).

Next, the Defendants have argued that their mandatory indoctrination "does not impose any constitutionally significant burden" because it "does not coerce Plaintiffs to refrain from raising their children in their preferred religious faith or penalize them for their religious conduct." ECF No. 42, at 9–10. The district court agreed. Op. 46–47. But this argument fails whether analyzed under *Yoder* or *Smith*'s neutral/generally applicable framework.

*First*, under *Yoder* (and *Smith*), "[t]he Free Exercise Clause of the First Amendment protects against indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 142 S. Ct. 1987, 1996 (2022) (cleaned up); *see Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017) (same). And judges should not "determine the 'centrality' of religious beliefs" as a threshold requirement for a free exercise claim—yet the Defendants' reference to "'[c]onstitutionally significant burden' would seem to be 'centrality' under another name." *Smith*, 494 U.S. at 887 & n.4. Any "inquiry into 'severe impact' is no different from inquiry into centrality." *Id.* at 887 n.4. "Such a threshold requirement would wholly deny protection . . . when religious significance is somewhat underestimated." Laycock, *The Religious Exemption Debate*, 11 Rutgers J. L. & Religion 139, 151 (2009). Courts should hesitate before telling religious claimants

4

that "the connection between what [they must do] and the end that they find to be morally wrong is simply too attenuated." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020) (cleaned up).

*Second*, under the framework of *Smith* and *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), "there is no substantial burden requirement when government discriminates against religious conduct." *Tenafly Eruv Ass'n, Inc. v. Tenafly*, 309 F.3d 144, 170 (3d Cir. 2002). As the Supreme Court recently explained, "a plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022). The Plaintiffs have shown, in multiple ways, that the Defendants' actions are not neutral or generally applicable—especially under the recent standards adopted by the Supreme Court in *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021), and *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877–79 (2021). *See* Motion 13–18. Thus, the Defendants have necessarily burdened religious exercise by discriminating against it. *See Hartmann v. Stone*, 68 F.3d 973, 979 n.4 (6th Cir. 1995) (explaining that plaintiffs in such cases "need not demonstrate a substantial burden on the practice of their religion"); *World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531, 534 (7th Cir. 2009) (similar); *contra* Op. 30 n.8.

5

On either basis—*Yoder* or *Smith*—strict scrutiny applies. The district court's focus on whether the Plaintiffs "still may instruct their children on their religious beliefs" (Op. 46) elides the nature of the Plaintiffs' claims, which are that the government's forced indoctrination burdens their religious exercise by contradicting their religious upbringing of their children. This burden easily amounts to (at least) indirect coercion. The government is using the inherently coercive environment of the public schools for instruction at odds with the Plaintiffs' religious beliefs—telling children in front of their peers that their beliefs are "hurtful" and "negative." Motion Ex. 12, at 2; *see Lee v. Weisman*, 505 U.S. 577, 592 (1992) ("[T]here are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools."); *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987) ("The State exerts great authority and coercive power through mandatory attendance requirements, and because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure.").

The district court's and the Defendants' suggestion that "use of the books involves no instruction on sexual orientation or gender identity per se" (ECF No. 42, at 6; *see* Op. 42–43) is as convincing as suggesting that reading *The Boy Who Cried Wolf* involves no lesson on lying "per se." The Defendants do not appear to dispute the sincerity of the Plaintiffs' beliefs, and the Plaintiffs "believe[] that [use of these books] is tantamount to endorsement." *Fulton*, 141 S. Ct. at 1876. "[R]eligious

6

beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Id.* (cleaned up). Even the district court agreed that the Defendants are "us[ing]" the books to "influence" children. Op. 43. And the Defendants could scarcely pretend to pass strict scrutiny if they thought that their mandatory reading had no effects on students. Likewise, the district court's suggestion that the Defendants do not use *enough* religiously offensive books to burden the Plaintiffs (*id.*) is nothing more than a second-guessing of the Plaintiffs' religious beliefs.

Last, a centerpiece of the district court's analysis was that "no case" "has recognized a free exercise claim based on government action that reduces the likelihood of meeting a sacred obligation." *Id.* at 48. This was apparently meant to characterize the Plaintiffs' claim "merely" as a reduced chance of successfully raising their children in their faith. An underlying premise seemed to be that the First Amendment analysis changes because the Plaintiffs "chose[]" "a public education." *Id.* at 48–50. All this is wrong.

As the Supreme Court has said, citizens have "a right to participate in a government benefit program without having to disavow [their] religious [exercise]," for "[t]he imposition of such a condition upon even a gratuitous benefit inevitably deters or discourages the exercise of First Amendment rights." *Trinity Lutheran*, 582 U.S. at 463; *see, e.g.*, *Carson*, 142 S. Ct. at 2000; *Espinoza*, 140 S. Ct. at 2261 (similar).

7

What was *Sherbert v. Verner*, if not "based on government action" (a denial of unemployment benefits) "that reduce[d] the likelihood of meeting a sacred obligation" (observing the Sabbath)? Op. 48; *see* 374 U.S. 398, 404 n.5 (1963) ("indirect discouragement[]" (cleaned up)). What was *Trinity Lutheran*, if not "based on government action" (a denial of playground funds) "that reduce[d] the likelihood of meeting a sacred obligation" (operating a robust ministry)? 582 U.S. at 463 ("It is true the Department has not criminalized the way Trinity Lutheran worships").

This right against indirect coercion in government programs is particularly compelling in the context of public schools, given that states generally require attendance at either a public school or some costly alternative. *See* Md. Code Ann., Educ. § 7-301. Indeed, the Supreme Court has repeatedly rejected tying First Amendment rights to the "choice" to go to public school. For instance, it rejected the argument in *Lee* that prayers at school graduations were permissible because of "the option of not attending the graduation." 505 U.S. at 595. The Court said that "[i]t is a tenet of the First Amendment that the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance." *Id.* at 596. "[S]ubtle and indirect" "pressure" "can be as real as any overt compulsion." *Id.* at 593.

8

## II. The district court's old, out-of-circuit authority no longer holds.

These free exercise principles recently articulated by the Supreme Court largely supersede the district court's outdated and out-of-circuit authority.

Start with the decision that "guided" the district court (Op. 46), *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008). There, parents "assert[ed] that they must be given prior notice by the [public] school and the opportunity to exempt their young children from exposure to books they find religiously repugnant." *Id.* at 90. *Parker* did not address a *Smith* claim of lack of neutrality or general application. Instead, holding that the Free Exercise Clause and the *Yoder* right were not implicated, *Parker* first emphasized that "there is no claim of direct coercion." *Id.* at 105. As shown, "direct coercion," whatever exactly that means, is never required.

Second, *Parker* said that "the mere fact that a child is exposed on occasion in public school to a concept offensive to a parent's religious belief does not inhibit the parent from instructing the child differently." *Id.* The court did not explain what this point has to do with any question relevant to the free exercise analysis, nor is such a connection apparent. Countermanding a parent's religious instruction with "religiously repugnant" instruction (*id.* at 90)—especially without *ever* providing the parent notice of this instruction (*id.* at 106)—burdens the parent's religious upbringing of their children. Of course the parent can still try to "instruct[] the child

9

differently," but the state may not make that burden more difficult by actively countering the parents' teaching.

The two other out-of-circuit cases relied on by the district court also deviate from recent precedent. The Sixth Circuit's opinion in *Mozert v. Hawkins County Board of Education* limited *Yoder* to its "singular set of facts," saying that it did not "announce a general rule." 827 F.2d 1058, 1067 (6th Cir. 1987). *Mozert* also dismissed the parental burden on the ground that the "plaintiff parents can either send their children to church schools or private schools, as many of them have done, or teach them at home." *Id.* Both points are inconsistent with current jurisprudence, as explained. Likewise in error was the court's limitation of a religious burden to "compulsion to affirm or deny a religious belief or to engage or refrain from engaging in a practice forbidden or required in the exercise of a plaintiff's religion." *Id.* at 1069. Those are burdens; so is indoctrinating young schoolchildren in a way contrary to the beliefs their parents are seeking to impart.

The Seventh Circuit in *Fleischfresser v. Directors of School District 200* dismissed the "burden to the parents" as "at most, minimal" because the parents "are not preclud[ed]" "from meeting their religious obligation to instruct their children." 15 F.3d 680, 690 (7th Cir. 1994). As discussed, that red herring does not alter the burden on parents whose religious instruction is being covertly undermined by government officials.

10

Finally, the court cited the Ninth Circuit's decision in *California Parents for the Equalization of Educational Materials v. Torlakson*, but that case did not consider "any burden on [parents'] religious exercise or practice" from curriculum because the issue was not raised on appeal. 973 F.3d 1010, 1019 (9th Cir. 2020). Indeed, it barely involved a free exercise claim, as the plaintiffs included it only "'as a catch-all,'" and "the complaint [did] not allege that students ever read or even s[aw] the" challenged material. *Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 267 F. Supp. 3d 1218, 1225–26 (N.D. Cal. 2017).

Below, the Defendants quoted out-of-context dicta from this Court's decision in *D.L. v. Baltimore Board of School Commissioners*, 706 F.3d 256 (4th Cir. 2013). The district court rightly disregarded that case, for it is irrelevant. It involved a claim that federal disability services provided in public schools must also be provided in private schools. This Court held that the "policy does not substantially infringe on Appellants' right to attend a private religious school" because not every "economic disadvantage on individuals who choose to practice their religion in a specific manner" gives rise to a free exercise claim. *Id.* at 263. This holding merely anticipates the Supreme Court's recent holding in *Espinoza*: "A State need not subsidize private education. But once a State decides to do so, it cannot disqualify some private schools solely because they are religious." 140 S. Ct. at 2261.

11

Here, the burden on the Plaintiffs' free exercise stems from the government's efforts to contradict their religious upbringing via mandatory indoctrination. As confirmed by historical precedents, DeGroff, *supra*, at 108–28, and recent Supreme Court precedents, this burden implicates parents' fundamental right to opt their children out of mandatory education contrary to their religious beliefs.

## CONCLUSION

For these reasons, the Court should enter an injunction pending appeal.

Respectfully submitted,

s/ Christopher Mills
CHRISTOPHER MILLS
*Spero Law LLC*
*557 East Bay Street #22251*
*Charleston, SC 29413*
*(843) 606-0640*
*cmills@spero.law*

Counsel for *Amici Curiae*

AUGUST 31, 2023

12

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) (suggesting a limit of "one-half the maximum length authorized by these rules for a party's principal brief") because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 2,590 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: August 31, 2023

/s Christopher Mills
Christopher Mills

## CERTIFICATE OF SERVICE

I, Christopher Mills, an attorney, certify that on this day the foregoing Brief was served electronically on all parties via CM/ECF.

Dated: August 31, 2023

s/ Christopher Mills
Christopher Mills
