No. 23-1890

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

TAMER MAHMOUD, *et al.*,

*Plaintiffs-Appellants*,

v.

MONIFA B. MCKNIGHT, *et al.*,

*Defendants-Appellees*.

—————————

On Appeal from the United States District Court for the
District of Maryland, Southern Division, Case No. 8:23-cv-1380
The Hon. Deborah L. Boardman, District Judge

—————————

**BRIEF OF AMICI CURIAE COMMONWEALTH OF VIRGINIA AND
17 OTHER STATES IN SUPPORT OF EMERGENCY MOTION FOR
INJUNCTION PENDING APPEAL**

—————————

JASON S. MIYARES
 *Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

ANDREW N. FERGUSON
 *Solicitor General*

KEVIN M. GALLAGHER
 *Deputy Solicitor General*

ANNIE CHIANG
 *Assistant Solicitor General*

September 5, 2023

*Counsel for the Commonwealth of
Virginia*

## CORPORATE DISCLOSURE STATEMENT

As governmental parties, *amici curiae* are not required to file a certificate of interested persons. Fed. R. App. P. 26.1(a).

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................... iii

IDENTITY AND INTERESTS OF *AMICI CURIAE* ............................... 1

BACKGROUND ................................................................................. 2

ARGUMENT ...................................................................................... 3

   I.  Laws authorizing students to opt out of sex education are longstanding and widespread ......................................... 4

   II.  Because of this nationwide history and practice, the School Board cannot satisfy strict scrutiny ......................................... 10

CONCLUSION .................................................................................. 13

COUNSEL FOR ADDITIONAL AMICI STATES ................................. 15

CERTIFICATE OF COMPLIANCE...................................................... 16

CERTIFICATE OF SERVICE.............................................................. 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bernal v. Fainter*,
467 U.S. 216 (1984)................................................................10

*Espinoza v. Montana Dep't of Rev.*,
140 S. Ct. 2246 (2020)..........................................................11

*Fulton v. City of Philadelphia*,
141 S. Ct. 1868 (2021).....................................................10, 12

*Herndon v. Chapel Hill-Carrboro Bd. of Educ.*,
89 F.3d 174 (4th Cir. 1996)...................................................10

*Holt v. Hobbs*,
574 U.S. 352 (2015)................................................................12

*Nation v. San Juan Cnty.*,
150 F. Supp. 3d 1253 (D. Utah 2015), aff'd sub nom
*Navajo Nation v. San Juan Cnty.*, 929 F.3d 1270 (10th
Cir. 2019)...............................................................................12

*Parham v. J.R.*,
442 U.S. 584 (1979)................................................................13

*Pierce v. Society of Sisters*,
268 U.S. 510 (1925)..................................................................5

*Prince v. Massachusetts*,
321 U.S. 158 (1944)..................................................................5

*Ramirez v. Collier*,
142 S. Ct. 1264 (2022)...........................................................11

*Troxel v. Granville*,
530 U.S. 57 (2000)....................................................................4

*Trustees of Schs. v. Van Allen*,
87 Ill. 303 (Ill. 1877)...............................................................6

*Washington v. Glucksburg*,
  521 U.S. 702 (1997)................................................................ 4

*West v. McConnell*,
  337 F. Supp. 1252 (E.D. Wisc. 1972), aff'd, 474 F.2d 1351
  (7th Cir.), vacated and remanded on other grounds, 416
  U.S. 932 (1973)..................................................................... 6

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972)................................................ 4, 5, 6, 11

**Statutes**

22 Pa. Code §4.29 ...................................................................... 8

105 Ill. Comp. Stat. Ann. 5/27-9.1a ........................................ 8

Ariz. Rev. Stat. Ann. §15-716 .................................................. 8

Cal. Educ. Code §51937 ............................................................ 8

Cal. Educ. Code §51938 ............................................................ 8

Colo. Rev. St. §22-1-128 ........................................................... 8

Colo. Rev. St. §22-25-104 ......................................................... 8

COMAR §13A.04.18.01 .................................................. 3, 8, 9, 12

Conn. Gen. Stat. Ann. §10-16 ................................................. 8

Conn. Gen. Stat. Ann. §10-16e (1979)..................................... 9

D.C. Mun. Regs. subtit. 5, §E2305.5 ..................................... 8

Fla. Stat. Ann. §1003.42 ........................................................... 8

Ga. Code Ann. §20-2-143........................................................... 8

Idaho Code Ann. §33-1608 ....................................................... 7

Idaho Code Ann. §33-1611 ..................................................... 8, 9

Ind. Code §20-30-5-17 ....................................................................... 8

Iowa Code Ann. §256.11 ............................................................... 8, 9

Kan. Admin. Regs. §91-31-35 ........................................................... 9

Ky. Rev. Stat. §158.1415 ................................................................... 8

La. Rev. Stat. Ann. §17:281 ............................................................. 8

Mass. Gen. Laws Ann. Ch. 71, §32A ............................................. 8

Me. Rev. Stat. Ann. tit. 22, §1911 ................................................. 8

Mich. Comp. Laws. §380.1507 ......................................................... 8

Minn. Stat. Ann. §120B.20 ............................................................... 8

Miss. Code Ann. §37-13-173 ............................................................ 8

Mo. Ann. Stat. §170.015 .................................................................... 8

N.C. Gen. Stat. §115C-81.30 ...................................................... 8, 9

N.H. Rev. Stat. §186:11 .................................................................... 8

N.J. Stat. Ann. §18A:35-4.7 ....................................................... 8, 9

N.M. Code R. §6.29.6 (2018) ........................................................... 8

N.Y. Comp. Codes R. & Regs. tit. 8, §135.3 .............................. 8

Nev. Rev. Stat. Ann. §389.036 ....................................................... 8

Ohio Rev. Code Ann. §3313.60 ....................................................... 8

Okla. Stat. Ann. tit. 70, §11- 103.3 .............................................. 8

Or. Rev. Stat. §336.465 ..................................................................... 8

R.I. Gen. Laws §16-22-17 ................................................................. 8

S.C. Code. Ann. §59-32-50 .......................................................... 8, 9

S.D. Codified Laws §13-33-6.1 .................................................................. 7

Tenn. Code Ann. §49-6-1305 ................................................................... 8

TX Educ. §28.004 ...................................................................................... 8

Utah Code Ann. §53E-9-203 ................................................................... 8

Va. Code. Ann. §22.1-207.2 .................................................................. 8, 9

Vt. Stat. Ann. tit. 16, §134 ...................................................................... 8

W. Va. Code Ann. §18-2-9 ....................................................................... 8

Wash. Rev. Code. Ann. §28A.230.070 .................................................. 8

Wis. Code §118.019 .................................................................................. 8

## Other Authorities

Eric A. DeGroff, *Parental Rights and Public School Curricula: Revisiting* Mozert *After 20 Years*, 38 J. L. & Educ. 83 (2009) ............................................................... 6

Melody Alemansour, *et al.*, *Sex Education in Schools*, 20 Geo. J. Gender & L. 467 (2019) ............................................ 7

N.M. Pub. Educ. Dep't, Health Education Standards with Benchmarks and Performance Standards §6.29.6.11 (2009)........................................................................................... 8

*Sex Ed State Law and Policy Chart*, SIECUS (July 2022), https://tinyurl.com/yddu4t74 ............................................... 7

Wyo. Dep't of Educ., HIV/AIDS Model Pol'y for Wyo. Pub. Sch. (1998)....................................................................... 7

## IDENTITY AND INTERESTS OF *AMICI CURIAE*[1]

*Amici curiae* are the Commonwealth of Virginia and 17 other States (collectively, the *Amici* States). Many *Amici* States have—like Maryland—passed laws providing parents with advance notice and the right to opt their children out of instruction on human sexuality. The School Board's policy in this case—imposing a categorical ban on opt outs for the Pride Storybooks—violates the federal Constitution and Maryland law. *Amici* States have a compelling interest in ensuring that their political subdivisions and school boards follow state law.

This is especially so when those state laws are meant to protect their citizens' First Amendment rights and parents' rights to direct the education of their children. The School Board's policy requires children to participate in sex education even where they or their families object on religious grounds. By refusing notice and opt outs, the School Board is infringing on the parents' and children's rights.

---

[1] This brief is filed under Federal Rule of Appellate Procedure 29(a)(2) and the accompanying motion for leave to file.

BACKGROUND

Last school year, the School Board introduced "over 22 LGBTQ+ inclusive texts for use in the classroom" for children in pre-Kindergarten and elementary school. ECF No. 8-2 (Op.) at 3-4. Those books discuss issues surrounding family life and human sexuality, including gender, romance, and pronoun usage, and encourage children to question their sexuality and gender identity. *Id.* at 3-4, 11; see also *id.* at 15 (teachers encouraged to instruct children that doctors only "make a guess about our gender" at birth and to frame disagreement with these ideas as "hurtful").

The School Board's own elementary school principals objected given the explicit nature of the storybooks' content coupled with the young age of the children involved. *Id.* at 15-16 (the storybooks "state[] as a fact" things that "some would not agree" are facts and are problematic because they "portray elementary school age children falling in love with other children, regardless of sexual preferences"). Parents including Plaintiffs—Muslim, Christian, and Jewish parents of children who attend school in Montgomery County—objected on religious grounds. *Id.* at 6-11.

Maryland law requires school systems to allow opt-outs for "instruction related to family life and human sexuality objectives." COMAR §13A.04.18.01(D)(2)(e)(i). As a result, the School Board correctly allowed parents to opt their children out of readings of the Pride Storybooks for most of last school year. Op. 15-17. But the Board quickly "reversed course," announcing that, for the school year that began on August 28, 2023, no further notice would be provided and no opt-outs tolerated. *Id.* at 17-18. In response to Plaintiffs' protesting the no-opt-out policy, School Board members accused Plaintiffs of promoting "hate" and compared them to "white supremacists" and "xenophobes." *Id.* at 20-21, 23.

Plaintiffs sued and moved for a preliminary injunction. The district court denied Plaintiffs' motion and declined to enjoin the ban pending appeal.

## ARGUMENT

The district court's holding that the School Board's policy of refusing parent requests to opt their young children out from the reading of Pride Storybooks does not burden the religious exercise of Montgomery County students or parents is wrong. Strict scrutiny governs the School

Board's action for the reasons stated in Plaintiffs' motion for injunction pending appeal. See Mot. 9-18. *Amici* States write separately to inform the Court how the practice of the vast majority of Maryland's sister States confirms that the School Board lacks a compelling interest and the School Board's policy is not the least restrictive means of furthering any governmental interest.

## I.    Laws authorizing students to opt out of sex education are longstanding and widespread

Parents in the United States have long enjoyed a fundamental right to raise and educate their children as they see fit. "[T]h[e] primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972). "In a long line of cases," the Supreme Court has held that "the 'liberty' specially protected by the Due Process Clause includes the right[] . . . to direct the education and upbringing of one's children." *Washington v. Glucksburg*, 521 U.S. 702, 720 (1997) (quotation marks omitted). The interest of parents in the "care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests recognized by" the Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

4

Correspondingly, the Supreme Court recognized almost one hundred years ago the limitations on governments' role in children's lives and education. "The child is not the mere creature of the State." *Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925). There in fact exists a "private realm of family life which the state cannot enter." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). Indeed, "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Ibid.* For that reason, "[t]he fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only." *Pierce*, 268 U.S. at 535. Indeed, parents—not governments—"have the right, coupled with the high duty, to recognize and prepare [a child] for additional obligations." *Ibid.* "The values of parental direction of the religious upbringing and education of their children in their early and formative years," for example, "have a high place in our society." *Yoder*, 406 U.S. at 213-14.

Although they do not have the primary duty to direct children's education, governments have—for hundreds of years—supported parents

in the carrying out of their duties to their children. "English cases from the Court of Chancery established the right of parents to make educational choices for their children despite the wishes of the child or even the preferences of civil authorities." Eric A. DeGroff, *Parental Rights and Public School Curricula: Revisiting* Mozert *After 20 Years*, 38 J. L. & Educ. 83, 110 & n.178 (2009) (collecting cases). "Even after the common school movement took hold in this country in the mid- to late 1800s, and compulsory education laws became commonplace around the turn of the century, the courts generally deferred to parental preferences when disputes arose over curricular requirements in the new publicly-funded schools." *Id.* at 113. Thus, at common law, "so long as, in exercising his parental authority in making the selection of the branches [his child] shall pursue, none others are affected, it can be of no practical concern to those having the public schools in charge." *Trustees of Schs. v. Van Allen*, 87 Ill. 303, 309 (Ill. 1877).

These parental rights are especially relevant in the realm of sex education. Few topics more directly implicate a parent's fundamental right to direct the "inculcation of moral standards" and "religious beliefs" of their children. *Yoder*, 406 U.S. at 233; see also *West v. McConnell*, 337

6

F. Supp. 1252, 1258 (E.D. Wisc. 1972), aff'd, 474 F.2d 1351 (7th Cir.), vacated and remanded on other grounds, 416 U.S. 932 (1973). But all States either require or authorize public schools to provide some instruction in human sexuality.[2] Given the obvious potential clash between the educational programs and the fundamental constitutional rights of parents, the vast majority of States "recognize the controversial nature of the issue" of sex education and "provide either 'opt-out' or 'opt-in' provisions" in their laws regulating sex education.[3] Melody Alemansour, *et al.*, *Sex Education in Schools*, 20 Geo. J. Gender & L. 467, 477 (2019).

---

[2] *Sex Ed State Law and Policy Chart*, SIECUS (July 2022), https://tinyurl.com/yddu4t74 (recording 47 States and the District of Columbia as requiring some type of sexual health education); Idaho Code Ann. §33-1608 (the "local school board" may decide "whether or not any program in family life and sex education is to be introduced in the schools"); S.D. Codified Laws §13-33-6.1 (requiring "character development instruction" including "sexual abstinence" unless the appropriate body chooses otherwise); Wyo. Dep't of Educ., HIV/AIDS Model Pol'y for Wyo. Pub. Sch. (1998) (contemplating HIV instruction at school).

[3] Opt-out provisions "allow parents to remove their children from the classroom during sex education instruction for religious, moral, or family reasons." Alemansour, *et al.*, *supra*, at 477. Opt-in provisions, on the other hand, "require affirmative parental consent, such as a permission slip, before children can participate in a sex education program." *Ibid.*

Maryland is one of those States. It provides that local school systems "shall establish policies, guidelines, and/or procedures for student opt-out regarding instruction related to family life and human sexuality objectives." COMAR §13A.04.18.01(D)(2)(e)(i). It joins over thirty other States in providing such opt-outs.[4] Five other States require that parents opt *in* before schools provide instruction on human sexuality to children.[5] All told, over 75% of the States in the Union provide opt-out

---

[4] See Ariz. Rev. Stat. Ann. §15-716(E); Cal. Educ. Code §§51937, 51938; Colo. Rev. St. §§22-25-104(6)(d), 22-1-128(3)(a), (4), (5); Conn. Gen. Stat. Ann. §10-16e; Fla. Stat. Ann. §1003.42(5); Ga. Code Ann. §20-2-143(d); Idaho Code Ann. §33-1611; 105 Ill. Comp. Stat. Ann. 5/27-9.1a(d); Ind. Code §20-30-5-17(c), (d); Iowa Code Ann. §256.11(6)(a); La. Rev. Stat. Ann. §17:281(D); Mass. Gen. Laws Ann. Ch. 71, §32A; Me. Rev. Stat. Ann. tit. 22, §1911; Mich. Comp. Laws. §380.1507(4); Minn. Stat. Ann. §120B.20; Mo. Ann. Stat. §170.015(5)(2); N.J. Stat. Ann. §18A:35-4.7; N.C. Gen. Stat. §115C-81.30(b); N.H. Rev. Stat. §186:11(IX-c); N.M. Code R. §6.29.6 (2018); N.M. Pub. Educ. Dep't, Health Education Standards with Benchmarks and Performance Standards §6.29.6.11 (2009); N.Y. Comp. Codes R. & Regs. tit. 8, §135.3 (Westlaw through Oct. 10, 2018); Ohio Rev. Code Ann. §3313.60(A)(5)(c); Okla. Stat. Ann. tit. 70, §11- 103.3(C); Or. Rev. Stat. §336.465(1)(b); 22 Pa. Code §4.29(c); R.I. Gen. Laws §16-22-17(c); S.C. Code. Ann. §59-32-50; Tenn. Code Ann. §49-6-1305; TX Educ. §28.004(i)(3); Va. Code. Ann. §22.1-207.2; Vt. Stat. Ann. tit. 16, §134; Wash. Rev. Code. Ann. §28A.230.070(4); W. Va. Code Ann. §18-2-9(c); Wis. Code §118.019(3), (4); D.C. Mun. Regs. subtit. 5, §E2305.5.

[5] See Ind. Code §20-30-5-17(c); Ky. Rev. Stat. §158.1415(1)(e); Miss. Code Ann. §37-13-173; Nev. Rev. Stat. Ann. §389.036(4); Utah Code Ann. §53E-9-203(3).

8

or opt-in rights to ensure that parents may exercise their fundamental rights to direct the education of their children when it comes to the incredibly sensitive topic of sex education. And these laws are longstanding: some States have had laws authorizing parents to opt their children out of sexual health instruction for decades. *E.g.*, Idaho Code Ann. §33-1611 (1970); Conn. Gen. Stat. Ann. §10-16e (1979); N.J. Stat. Ann. §18A:35-4.7 (effective 1980).

Although States can set curricula in public schools, States also recognize that parents—not governments—typically have the right to direct the education of children and often allow parents to exclude their children from sexual health instruction for any grounds (or no grounds) whatsoever. *E.g.*, COMAR §13.04.18.01(D)(2)(e)(i); N.C. Gen. Stat. §115C-81.30(b); Va. Code. Ann. §22.1-207.2. Some States permit opt outs only if the educational program would conflict with the student's or family's religious beliefs. *E.g.*, Iowa Code Ann. §256.11(6)(a) ("pupil's religious beliefs"); Kan. Admin. Regs. §91-31-35(a)(5)(b) ("religious teachings of the pupil"); S.C. Code. Ann. §59-32-50 ("family's beliefs"). But in nearly all States, written notification by a parent or guardian is enough to satisfy the opt-out criteria.

9

States' near-universal adoption of broad parental opt-in or opt-out policies for purposes of sexual health instruction thus reflects a time-honored tradition of State recognition of parental rights.

## II. Because of this nationwide history and practice, the School Board cannot satisfy strict scrutiny

Strict scrutiny is the appropriate standard to review the School Board's decision to deny opt-outs. Mot. 3, 9 (citing *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) and *Herndon v. Chapel Hill-Carrboro Bd. of Educ.*, 89 F.3d 174, 179 (4th Cir. 1996)). To withstand strict scrutiny, government action "must advance a compelling state interest by the least restrictive means available." *Bernal v. Fainter*, 467 U.S. 216, 219 (1984). The School Board cannot establish a compelling state interest in a categorical ban on opt outs given the long history and continued practice of the vast majority of States—including Maryland—in providing such opt outs to their parents. And this longstanding tradition also means that the School Board cannot establish that its ban is the least restrictive means available—a less restrictive means has been implemented in over three-quarters of the States, including Maryland.

Compelling interests—especially ones invoked to support "relatively recent" regulations on longstanding religious exercise—must

10

have historical analogues. See, *e.g.*, *Yoder*, 406 U.S. at 226-30 (analyzing the "historical origin" of "compulsory education and child labor laws"). These analogues must establish a "historic and substantial" tradition that is analogous to the restriction at issue. *Espinoza v. Montana Dep't of Rev.*, 140 S. Ct. 2246, 2258 (2020). When, by contrast, there is a "long history" and "continue[d]" practice from other States of doing the exact opposite, there is no "basis for deference" to a government's policy. *Ramirez v. Collier*, 142 S. Ct. 1264, 1279-80 (2022).

Here, there is a "historic[] and routine[]" consensus on allowing parental opt outs from sex education. *Id.* at 1279. Three-quarters of the States provide parents with advance notice and opt outs for instruction on human sexuality (or only have instruction on an opt-*in* basis). See p.8, *supra*. There is thus no compelling interest in asserting "a categorical ban" on religious exercise that is upheld by "longstanding [regulatory] practice." *Ramirez*, 142 S. Ct. at 1279-80, 1283.

Indeed, the School Board's policy conflicts not only with the longstanding consensus of the States, but also with the law of its *own* State. Maryland has long required public schools to notify parents and allow opt-outs from *any* instruction on "family life and human sexuality."

11

COMAR §13A.04.18.01(D)(2)(e)(i). The School Board cannot have a compelling interest in violating Maryland law. See *Nation v. San Juan Cnty.*, 150 F. Supp. 3d 1253, 1269 (D. Utah 2015), aff'd sub nom. *Navajo Nation v. San Juan Cnty.*, 929 F.3d 1270 (10th Cir. 2019) (A "local governing body cannot have a legitimate governmental interest in violating state law.").

And even if the School Board could identify a compelling interest justifying its opt-out ban, it still cannot show that the ban is the least restrictive means for achieving its asserted interest. "[S]o long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881. The School Board cannot meet the least restrictive means test unless it can explain why its "system is so different" from the dozens of other jurisdictions that accommodate religious exercise through parental opt outs. *Holt v. Hobbs*, 574 U.S. 352, 367 (2015). The School Board is unable to show "why the vast majority of States" permit opt outs, "but it cannot." *Id.* at 368.

\*     \*     \*

"[H]istorically [the law] has recognized that natural bonds of affection lead parents to act in the best interests of their children."

*Parham v. J.R.*, 442 U.S. 584 (1979). Maryland and most of its sister States have acknowledged as much by enacting laws that enshrine the superiority of parental choice in the realm of sexual health education. Defendants' actions not only violate state law but demonstrate a foundational disrespect and contempt for Plaintiffs' fundamental constitutional rights. The district court accordingly erred when it denied Plaintiffs' motion for preliminary injunction.

## CONCLUSION

This Court should grant Plaintiffs' motion for an injunction pending appeal.

Respectfully submitted,

By:   */s/ Andrew N. Ferguson*
Andrew N. Ferguson
*Solicitor General*

JASON S. MIYARES
  *Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile


September 5, 2023

KEVIN M. GALLAGHER
  *Deputy Solicitor General*

ANNIE CHIANG
  *Assistant Solicitor General*




*Counsel for the Commonwealth of Virginia*

## COUNSEL FOR ADDITIONAL AMICI STATES

STEVE MARSHALL
Attorney General
State of Alabama

TREG TAYLOR
Attorney General
State of Alaska

TIM GRIFFIN
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

BRENNA BIRD
Attorney General
State of Iowa

DANIEL CAMERON
Attorney General
Commonwealth of Kentucky

LYNN FITCH
Attorney General
State of Mississippi

ANDREW BAILEY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW WRIGLEY
Attorney General
State of North Dakota

DAVE YOST
Attorney General
State of Ohio

GENTNER F. DRUMMOND
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

ANGELA COLMENERO
Provisional Attorney General
State of Texas

SEAN D. REYEES
Attorney General
State of Utah

PATRICK MORRISEY
Attorney General
State of West Virginia

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because it contains 2,565 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Andrew N. Ferguson*
Andrew N. Ferguson

## CERTIFICATE OF SERVICE

I certify that on September 5, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

*/s/ Andrew N. Ferguson*

Andrew N. Ferguson